IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SANDRA V. BOYD,

               Plaintiff,

      v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

              Defendant.

Case No. 12 C 2786

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Sandra Boyd (hereinafter, "Boyd" or "Plaintiff") asks this Court to reverse or remand the Commissioner of Social Security's conclusion that she is not disabled. For the reasons stated herein, the Court declines to do so. As such, the Court denies Plaintiff's Motion for Summary Judgment.

## I.  BACKGROUND

Prior to 2008, Sandra Boyd worked as a check processor, data entry clerk, school food service provider, and day-care provider. She claims that she stopped working in early 2008 after she slipped on ice in December 2007 and tore her rotator cuff.

On June 20, 2008, Boyd underwent arthroscopic surgery to repair her shoulder. Since that time, she has been diagnosed and/or treated for: carpel tunnel syndrome, asthma, arthritis, depression, bilateral median neuropathy at the wrist, herniated

discs at the neck, hypertension, diabetes mellitus, coronary artery disease, a myocardial infarction, and Raynaud's phenomenon.

The medical evidence in this case is voluminous and relates to several impairments. Boyd claims that her case hinges on the Administrative Law Judge's (the "ALJ") evaluation of her hand and thumb impairments and her carpal tunnel syndrome. In light of this, the Court focuses its attention on these impairments, and summarizes Boyd's other medical conditions only briefly.

### A. Boyd's Medical History

Shortly after Boyd injured her rotator cuff in late 2007, she visited her primary physician, Dr. Daniel Montalvo. At this time, Dr. Montalvo ordered an MRI and referred Boyd to Dr. Jay Booker for further assessment and treatment.

On December 26, 2007, Dr. Booker diagnosed Boyd with severe impingement to the right shoulder. He performed a subacromial injection and began physical therapy. Despite this treatment, Boyd reported minimal improvement. Because of this, Dr. Booker referred Boyd to Dr. Gregory Primus, an orthopedic specialist. After Dr. Primus examined Boyd, he recommended arthroscopic surgery, which he performed on June 20, 2008.

After her surgery, Boyd continued to report pain and stiffness in her shoulder, neck and arms. Due to these complaints, Dr. Primus ordered a Nerve Conduction Study which was

administered on December 22, 2008.  The study revealed mild to moderate carpal tunnel syndrome.

In February 2009, Dr. Primus ordered an MRI of Boyd's cervical spine.  The MRI revealed disc herniation and disc protrusions.  After reviewing the MRI, Dr. Primus referred Boyd to Dr. Mark Chang, a physician at Midwest SpineCare.

On March 3, 2009, Dr. Chang examined Boyd and reviewed her MRI.  He then recommended injection treatments for the herniated discs.  Boyd reported that these treatments provided her only minimal relief.

On April 18, 2009, Boyd suffered a heart attack while undergoing the placement of stents in her right coronary artery. She went through cardiac rehab from July 2009 to October 2009. The medical records reveal that by June 2009 Boyd demonstrated substantial improvement and by September 2010, Boyd had good exercise capacity.  At this time, she denied any chest pain or shortness of breath.

Also, in September 2010, Boyd was diagnosed with benign essential hypertension.  This is a mild condition with minimal treatment and has little effect on Boyd's ability to perform work related tasks.  The same is true with respect to Boyd's diabetes mellitus.

During the time Plaintiff was recovering from her myocardial infarction, she continued to see Dr. Primus for her shoulder pain

- 3 -

and carpal tunnel syndrome.  In April 2010, Boyd continued to complain about pain in her hands.  On April 27, 2010, Dr. Primus noted edema (a large amount of fluid) in Boyd's right hand.  On June 17, 2010, Boyd again saw Dr. Primus and continued to complain about hand pain.  Because of this, he ordered her to wear a splint.

On November 19, 2010, Boyd had another appointment with Dr. Primus.  She claims she told him that she was getting weaker, but denied having numbness or tingling in her hands.  Dr. Primus then referred Boyd to Dr. Robert Coats, a hand specialist.

Dr. Coats examined Boyd's hand x-rays and determined that Boyd had bilateral CMC arthritis.  Dr. Coats noted that Boyd had obliteration of joint space, but was "clinically . . . doing quite well."  Pl.'s Memo. in Supp. of Mot. Summ. J. at 6.

In March 2011, Plaintiff's primary care physician, Dr. Montalvo completed a medical source statement for Boyd.  In the report, Dr. Montalvo noted that Boyd's diagnosis included Raynaud's phenomenon and that her ability to handle and manipulate objects was "OK."  Def.'s Resp. to Pl.'s Mot. for Summ. J. at 4.

In April 2011, Boyd saw Dr. Coats for a follow-up visit.  At this time, Dr. Coats noted that Boyd's x-rays revealed significant arthritic changes.  His notes further indicated that Boyd reported she experienced pain with certain activities, but

- 4 -

was "able to do most things without too much discomfort." ECF No. 9-13, Page ID # 843.

## B. Procedural History

On June 10, 2008, Boyd applied to the Social Security Administration (the "Administration") for Social Security Disability benefits alleging a disability onset date of May 27, 2008.

After a hearing, in February 2010, Administrative Law Judge Patrick Nagle ("ALJ Nagle") determined Boyd was not disabled. She appealed the decision. Ultimately, the Appeals Council granted Boyd's request for review and vacated ALJ Nagle's decision.

In September 2011, a new hearing was held before Administrative Law Judge Curt Marceille ("ALJ Marceille" or "the ALJ"). In October 2011, ALJ Marceille issued a decision denying Plaintiff's claim. Again, Boyd appealed. However, this time the Appeals Council denied review, rendering ALJ Marceille's decision final.

On April 16, 2012, Boyd initiated the instant suit in this Court. In her Complaint, she contends that the decision of ALJ Marceille was erroneous. She requests that this Court reverse the decision and find her disabled.

On November 9, 2012, Boyd filed a Motion for Summary Judgment. In her Motion, she argues she is entitled to judgment

because (1) ALJ Marceille's decision was unsupported by substantial evidence; (2) ALJ Marceille selectively omitted evidence favorable to Plaintiff; (3) ALJ Marceille erred in finding that Boyd's hand and thumb problems were not severe; (4) the Appeals Council erred in failing to remand the case on grounds of new and material evidence; and (5) ALJ Marceille's credibility finding was erroneous and unsupported by substantial evidence.

## II. <u>LEGAL STANDARD</u>

This Court's role in the instant action is limited to ensuring that ALJ Marceille applied the correct legal standard and had substantial evidence to support his decision. *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cri. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Because an ALJ "is in the best position to determine the credibility of witnesses," this Court affords the ALJ's credibility determinations "considerable deference" and only overturns such determinations if they are patently wrong. *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008); *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006).

Disabled is defined as the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than twelve months." *See* 20 C.F.R. § 404.1520. To evaluate a disability claim, an ALJ must use the five-step analysis in 20 C.F.R. §404.1520(a)(4). If a claimant is found "not disabled" at any step, the inquiry ends and the claim is denied. *Id.*

At Step One, a claimant is not disabled if she is currently performing substantial gainful activity. *Dixon v. Massanari*, 270 F.3d 1171, 1776 (7th Cir. 2001). At Step Two, a claimant is not disabled unless she has a "severe" medical impairment. *Id.* At Step Three, a claimant *is* disabled if her impairments meet or equal the listings at 20 C.F.R. Part 404, Subpart P, App. 1. If they do not, the analysis continues. Before proceeding to Step Four, the ALJ determines a claimant's Residual Functional Capacity ("RFC"); that is, what work she can do despite her limits. 20 C.F.R. § 404.1545(a). At this stage, the ALJ considers all record evidence and all of the claimant's impairments, severe or not. *Id.* At Step Four, a claimant is not disabled if she has the RFC to perform her past work. *Dixon*, 270 F.3d at 1176. At Step Five, a claimant is not disabled if she can do any work in the national economy based on her RFC, age, education, work experience. *See* 20 C.F.R. § 404.1512(g).

- 7 -

An ALJ must consider all relevant evidence and may not "cherry-pick" only facts that indicate non-disability; however, he need not discuss every piece of evidence. *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010). That is, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *McKinzey v. Astrue,* 641 F.3d 884, 889 (7th Cir. 2011).

On review, this Court critically reviews the evidence, but does not reweigh it, resolve conflicts, or substitute its own judgment for the Commissioner's. *McKinzey*, 641 F.3d at 889. Because this Court reviews only a cold record, an ALJ's credibility findings receive special deference. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). However, mere boilerplate determinations do not suffice. *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011). Finally, review is limited to the ALJ opinion's stated rationale. *Campbell v. Astrue*, 627 F.3d 299, 306.

### III.  DISCUSSION

At Step One of his decision, ALJ Marceille concluded that Boyd did not engage in any substantial gainful activity between May 27, 2008 and October 6, 2011. At Step Two, he found four severe impairments: asthma, bilateral rotator cuff tear, cervical herniated disc, and the status of Boyd's right shoulder

after her surgery. He noted that these conditions impose "more than minimal limitations" on Boyd's ability to work. He then concluded that Boyd's impairments did not meet or equal a listed impairment, and proceeded to determine her RFC.

After considering Boyd's medical records and testimony, ALJ Marceille found that Boyd's impairments "could reasonably be expected to cause" the symptoms Boyd complained of, but found her statements concerning the "intensity, persistence, and limiting effects" of the symptoms lacked merit. ECF No. 9-3; Page ID # 46. He then determined that Boyd has the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b)." ECF No. 9-3; Page ID # 49.

In finding credibility issues with Boyd's allegations, ALJ Marceille compared her testimony regarding her physical limitations with the evidence of her work history, medical records, and daily living activities. In doing so, the ALJ found a number of inconsistencies. For example, while Boyd claimed repeatedly that she endured disabling hand pain, the record indicated that Boyd admitted she was able to "watch television, shop, clean, wash dishes, sweep, drive, exercise, attend church, and go the mall." *Id.* The ALJ determined that performing these activities was inconsistent with the reported physical limitations.

- 9 -

Boyd attacks the ALJ's ruling on five points. First, she argues that ALJ Marceille's decision was unsupported by substantial evidence. Second, she claims the ALJ omitted favorable evidence. Third, she contends that it was erroneous to find that her hand and thumb ailments were not severe. Next, she argues that the Appeals Council erred in failing to remand the case. Finally, Boyd claims that the ALJ's credibility finding was erroneous. The Court considers each issue in turn.

## A. Substantial Evidence

Plaintiff argues that ALJ Marceille's determination that her hand and thumb impairments were not a severe impairment was a finding unsupported by substantial evidence. Specifically, Boyd argues that the ALJ placed too great an emphasis on a report by Boyd's primary care physician, Dr. Montalvo. Boyd argues Dr. Montalvo's April 2011 statement that Boyd's ability to grasp, handle, or manipulate objects was "OK" cannot provide substantial evidence that Boyd's hand and thumb condition is non-severe. If this were the only evidence on which the ALJ relied the Court may agree; however, this is not the case.

Contrary to Plaintiff's assertions that the ALJ relied too heavily on Dr. Montalvo's reports, in his opinion, the ALJ noted that he gave only "minimal weight" to Dr. Montalvo's assessment. ECF No. 9-3; Page ID # 50. He noted that since Dr. Montalvo was only a general internist and not a specialist, and only saw Boyd

for acute problems, his opinion was not afforded as much weight as Boyd's treating surgeon, Dr. Gregory Primus. *See id.* at Page ID # 51. Indeed, when finding Boyd's thumb and hand ailments non-severe, the ALJ also relied on the 2009 report from Dr. Primus which indicated that Boyd could participate "unrestricted in work, sports, and gym activity . . . [.]" *Id.*

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). Here, the ALJ did not simply "substitute his own judgment" for one of Boyd's physicians, and ignore the medical evidence. *Id.* Instead, the ALJ considered both Dr. Primus' report and Dr. Montalvo's opinion in making his determination. Moreover, this assessment is consistent with Dr. Coats' treatment notes, and with the report from Dr. David Mack, (the reviewing physician from the state agency). *See generally*, ECF No. 9-3, Page ID # 50. Therefore, the Court rejects Boyd's contention that the ALJ's decision was against substantial evidence.

### B. Omission of Favorable Evidence

Next, Plaintiff argues that the ALJ ignored favorable evidence. Plaintiff claims that the ALJ's failure to discuss any

of the records regarding Boyd's treatment of her hand and thumb problems constitutes reversible error.

"An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). Boyd argues that the only record the ALJ discussed regarding Boyd's hand and thumb impairments was one entry from Dr. Coats that indicated Boyd was doing well after she received an injection. However, after reviewing the ALJ's decision and the medical records from Dr. Coats, the Court disagrees.

First, Boyd concedes that the ALJ's decision stated that Boyd's medical records revealed "complaints of numbness and tingling due to mild to moderate carpal tunnel syndrome," and that in April 2011, Boyd had "X-rays of the bilateral thumbs [which] showed significant arthritic changes . . . [.]" ECF No. 9-3; Page ID # 43. Plaintiff complains that the ALJ failed to include the language from the April 2011 report that indicated that Boyd had "complete obliteration of the joint space with the subluxation of the metacarpal base." Mem. in Supp. of Pl.'s Mot. Summ. J. at 11. While Court acknowledges that this line is not included in the ALJ's decision, "the ALJ is not required to discuss every piece of evidence." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Moreover, the phrase "arthritic change" describes abnormalities to the joints and the ALJ

included in his decision that Dr. Coats' report noted significant arthritic changes. ECF No. 9-3; Page ID # 43. Thus, this is not a case where the ALJ "ignored an entire line of evidence that is contrary to [] [his] findings" or only mentioned "the medical evidence favoring the denial of benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Therefore, the Court rejects Plaintiff's argument that ALJ Marceille's decision should be reversed because he omitted evidence favorable to Boyd.

### C. The Severity of Boyd's Hand or Thumb Impairment

Plaintiff also argues that the ALJ erred in finding Boyd's hand and thumb problems and her heart attack were not severe. The Commissioner responds that this argument is legally irrelevant since the ALJ found that Boyd had at least one severe impairment.

Plaintiff does not dispute that the ALJ determined that Boyd had four severe impairments - a bilateral rotator cuff tear, asthma, a cervical herniated disc, and the status of Boyd's right shoulder after her surgery. After making this determination the ALJ considered "the impact of all impairments – severe or not severe" on Boyd's ability to work. *Curtis v. Astrue*, 623 F.Supp.2d 957, 968 (S.D. Ind. 2009). The analysis at this point included a discussion of Plaintiff's carpal tunnel syndrome, hypertension, myocardial infarction, and the history of coronary artery disease. *See* ECF No. 9-3; Page ID # 43. Because of this,

- 13 -

the Court finds the ALJ evaluated all relevant evidence - severe or not - and therefore did not commit reversible error because he failed to label Boyd's hand and heart impairments as severe. *See Curtis*, 623 F.Supp.2d at 968 (finding "[a]s long as the ALJ proceeds beyond step two, . . . no reversible error could result solely from his failure to label a single impairment as 'severe.'); *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (stating that courts uphold an ALJ's decision if the evidence supports the decision and the ALJ analyzes a claimant's impairments in combination).

### D. Appeals Council & Failure to Remand

Plaintiff contends that the Appeals Council erred in failing to remand her case because of new and material evidence. Plaintiff points to a January 2011 assessment from Dr. Coats which states that the pain Boyd suffers from her bilateral thumb arthritis limits here ability to grasp or pinch objects. *See* ECF No. 9-13; Page ID # 850. Plaintiff relies on *Farrell v. Astrue* to support her argument. *Farrell v. Astrue*, 692 F.3d 767 (7th Cir. 2012).

42 U.S.C. § 405(g) provides that a reviewing court may consider additional evidence "only upon a showing that there is new evidence which is material." The Seventh Circuit has held that when reviewing the decision from the Appeals Council to

reject a claimant's appeal, a district court should examine whether the Appeals Council made an error in applying regulations 20 C.F.R. §§ 404.970(b), 416.1470. However, "[i]n the absence of any such error . . . the Council's decision whether to review is discretionary and unreviewable." *Farrell*, 692 F.3d at 771.

In denying Boyd's appeal, the Appeals Council stated that it examined Boyd's case, the reasons she disagreed with the ALJ's decision and the additional evidence she submitted. The Appeals Council found that the "information [] [did] not provide a basis for changing the Administrative Law Judge's decision." ECF No. 9-3; Page ID # 29.

In *Farrell*, the Seventh Circuit determined that this language, while ambiguous, is indicative of a finding that the Appeals Council determined that the additional evidence is not new or material. *Id.* at 771-73. Thus, this Court now must examine whether this determination was erroneous.

Even assuming that Plaintiff can establish that Dr. Coats' January 2011 medical assessment constitutes new evidence, the Court does not find this evidence material. *See Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (stating "[n]ew evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered").

While Plaintiff argues that the language in the assessment regarding Boyd's limited ability to pinch and grasp objects would have changed the ALJ's decision, Plaintiff fails to take into account the other remarks in the assessment that support the ALJ's decision.  For example, the assessment notes that with treatment, Boyd's hand condition has improved.  ECF No. 9-13; Page ID # 850.  Moreover, the assessment indicates that Dr. Coats believes Boyd can walk, stand or sit for an 8 hour work day and reveals that Boyd has no restrictions on occasionally lifting 10 pounds or carrying objects.  This evidence supports a finding that Boyd's hand ailments were not severe and that Boyd could perform "light work" as defined in the regulations.

In addition, Dr. Coats' subsequent April 2011 report states that Boyd was doing well clinically and that she reported that "although it hurts with certain activities, more so on the left than the right; she is able to do most things without too much discomfort."  ECF No. 9-13; Page ID # 843.

Thus, after examining Plaintiff's new evidence in its entirety, the Court does not find there to be a reasonable probability that it would have changed the way the ALJ ruled on the case.  *Barnhart*, 395 F.3d at 742.  Therefore, the Court does not find that the Appeals Council erred in rejecting Boyd's second appeal.

- 16 -

### E. Adverse Credibility Finding

Finally, Boyd argues that the ALJ's credibility finding is erroneous because it is unsupported by substantial evidence. Specifically, Boyd argues that the ALJ failed to consider the factors in Social Security Ruling 96-7 in making his determination.

This Court gives the ALJ's credibility findings "special, but not unlimited deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012). "The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence." *Romo v. Astrue*, No. 10-C-6044, 2013 WL 250639 *7 (N.D. Ill. Jan. 23, 2013). In making credibility determinations, the ALJ must consider a number of factors in 20 C.F.R. § 404.1529(c), and "must support [his] credibility findings with evidence in the record." *Id.*

After reviewing the evidence and the ALJ's decision, the Court finds the ALJ assessed Plaintiff's credibility reasonably. The ALJ did not merely state that he found Boyd's allegations incredible because they were "inconsistent with the judge's assessment of [] [her] residual functional capacity." *Id.* Instead, the ALJ went through the factors listed in Social Security Ruling 96-7 to make his finding.

First, the ALJ noted that while Boyd claimed that her disability onset date was May 27, 2008, her earnings records

- 17 -

demonstrated that her last reported income was in 2006. ECF No. 9-3; Page ID # 49. The ALJ found this discrepancy significant because Boyd stated that she started her own day-care business and "earned approximately $11,000 through her business and reported this income in her tax filings, [] [however,] there is no documented income from 2007 and 2008." *Id.*

As further support, the ALJ noted that Boyd's own reports were inconsistent with her allegations regarding her physical limitations. This is one of the factors an ALJ should consider in assessing personal complaints. *See* 20 C.F.R. § 404.1529(c)(3)(I). Moreover, the ALJ did not determine that Boyd's ability to perform her daily activities meant that she could perform full-time work. Instead, he found such allegations inconsistent with her complaints. The Court agrees with this finding. Specifically, the Court finds it strange that Boyd reported that she was able to sweep, wash dishes, and drive, but at the same time claimed she has "a hard time squeezing a towel." Mem. in Supp. of Pl.'s Mot. for Summ. J. at 2.

In addition to this, the ALJ compared Boyd's complaints with the treatment records from her orthopedic surgeon, Dr. Primus, and her primary care physician, Dr. Montalvo, when determining that Boyd's allegations were not entirely credible. After reviewing the notes from both physicians, specifically the notes from Dr. Primus which indicated consistently that Boyd's

condition was unchanged or improved, the ALJ determined that Boyd's self-proclaimed limitations were excessive.

Thus, the Court finds the ALJ's credibility determination sufficiently individualized and substantive and declines to reverse the decision on this basis. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

### IV. <u>CONCLUSION</u>

For the reasons stated herein, the Court denies Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date:3/12/2013

- 19 -